## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **M.C., a Minor, By and Through His Mother, Marie Conyers** | : | |
| | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **Case No. _____** |
| | : | |
| **SCHOOL DISTRICT OF PHILADELPHIA** | : | |
| | : | |
| **Defendant.** | : | |

## COMPLAINT

Plaintiff M.C., with his mother Marie Conyers ("Parent": together, "Plaintiffs") bring this civil action against the School District of Philadelphia ("the District") under the Individuals with Disabilities Education Act ("IDEA"), 42 U.S.C. § 1400 and its federal and state implementing regulations; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and its federal and state implementing regulations; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq*. and its federal and state implementing regulations; and Chapters 14 and 15 of the Pennsylvania Code, seeking compensatory education and other relief due to the District's violations of the IDEA, Section 504, and the ADA.

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over the IDEA, Section 504, and ADA claims pursuant to 28 U.S.C. § 1331, as these claims arise under the laws of the United States.

2. This Court has supplemental jurisdiction over the claims made pursuant to 22 Pa. Code Chapter 14 and 22 Pa. Code Chapter 15, as these claims are so related to the claims that

are within this Court's original jurisdiction that they form part of the same case or
controversy.

3.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2), because the
events and omissions giving rise to the claims in this case arose in this judicial district
and all the parties reside within the jurisdiction of this Court.

## PARTIES

4.  M.C. is now a sixteen-year-old student who lives with his mother Marie Conyers within
the boundaries of the School District of Philadelphia.  M.C. has resided within the
boundaries of the School District of Philadelphia at all times relevant to this Complaint.

5.  Marie Conyers is M.C.'s parent and legal guardian.  Ms. Conyers has resided within the
boundaries of the School District of Philadelphia at all times relevant to this Complaint.

6.  The School District of Philadelphia is a Pennsylvania public school district with its
central offices located at 440 North Broad Street, Philadelphia, PA 19130.  The School
District of Philadelphia is a local educational agency ("LEA") within the meaning of 20
U.S.C. § 1401(15), 34 C.F.R. § 300.28, 22 Pa. Code 14.102(a)(2)(vii) and a federal funds
recipient within the meaning of the IDEA, 20 U.S.C. § 1401 and Section 504, 29 U.S.C. §
794(b)(2)(B).

## ADMINISTRATIVE EXHAUSTION

7.  Parent and M.C. have administratively exhausted this matter through the special
education hearing system, captioned at ODR No. 20659-17-18, as a result of the Due
Process Hearing requested by the Parent on April 30, 2018.  Hearing Officer Michael J.
McElligott issued his decision on November 7, 2018.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

8.  M.C. is diagnosed with Autism Spectrum Disorder, Oppositional Defiance Disorder, Attention-Deficit Hyperactivity Disorder – Combined ("ADHD"), Unspecified Trauma and Stressor-Related Disorder, and Borderline Intellectual Functioning. M.C. began attending school in the District in September 2008, his kindergarten year.  He attended Andrew K. Hamilton School.

9.  Beginning in M.C.'s first grade year, he displayed significant behavioral difficulties.  He did not complete classwork, was often distracted, and was disruptive to other students.

10. After noting that M.C. was not engaged in school, Parent took M.C. to Elwyn Educational Services for psychoeducational testing in his second grade year.  In a Psychoeducational Evaluation Report dated November 2011, M.C. was diagnosed with a Specific Learning Disability.

11. After Parent provided the Psychoeducational Report to the District, the school team finally decided to conduct its own evaluation of M.C.  In January 2012, the District found, consistent with the private evaluation, that M.C. was eligible to receive specially-designed instruction as a student with a Specific Learning Disability.

12. M.C. began receiving specially-designed instruction through an Individualized Education Program ("IEP") in the spring of 2012, his second grade year.

13. Although M.C. was receiving specially-designed instruction, he continued to struggle behaviorally. M.C. experienced several traumatic events.  Specifically, M.C. experienced a group assault on himself and Parent while they were at a playground located at William L. Sayre High School in the District.

14. After this incident, M.C. was more disruptive in class, unable to focus, and rarely completed assignments. He also had significant difficulty socializing with other students and was regularly subjected to bullying from peers. M.C. became school-avoidant.

15. During M.C.'s fourth grade year, the 2012-2013 school year, Parent sought therapy for M.C. through the Philadelphia Mental Health Center. In spring 2013, M.C.'S therapist, Rebecca Selvin, observed M.C. in school. She noted that M.C. struggled with social interactions throughout the day. M.C. stood too close to other children, had a flat affect during both play and reprimand, and was picked on by other students. Ms. Selvin opined that M.C. exhibited signs of Autism Spectrum Disorder and referred him to a psychologist for an evaluation.

16. M.C. was evaluated by Dr. Steven Bosin on April 29, 2013. Dr. Bosin opined that M.C. displayed social difficulties including being teased and bullied, not picking up on social cues, displaying poor social boundaries, displaying younger interests, and not having ongoing friendships. In addition to his difficulty with social interaction, M.C. was easily distracted, forgetful, unable to follow directions, and anxious.

17. Dr. Bosin diagnosed M.C. with Pervasive Developmental Disorder ("PDD"), Not Otherwise Specified.

18. M.C. continued to struggle in his third and fourth grade years in the District. Teachers reported that while M.C. was able to complete classwork when he attempted to, his behaviors proved to be a barrier to his academic achievement. By spring 2014, M.C.'s fourth grade year, M.C. was below average in reading comprehension and oral reading fluency. He was deficient in spelling, numerical operation, and math fluency. He was

often absent from school, but when M.C. was present, his teachers described him as
aggressive, disruptive, anxious, non-compliant, and constantly off-task.

19. In March 2014, Parent took M.C. to the Center for Autism for a Comprehensive
Biopsychosocial Evaluation.  In a report dated March 18, 2014, M.C. was diagnosed with
ADHD, Social Anxiety Disorder, and Borderline Intellectual Functioning.

20. M.C.'s school refusal persisted in the 2014-2015 school year.  Finally, in September
2015, Parent withdrew M.C. from the District and began instructing him through a home
education program pursuant to 22 Pa. Code § 11.31(a).  M.C. was educated in the home
during the 2015-2016 school year.

21. Parent re-enrolled M.C. in the District in June 2016, but quickly realized that M.C.'s
struggles with attention, focus, aggression, and anxiety persisted.  Parent was given no
reason to believe that M.C. had any chance for success in the District.  In the 2016-2017
school year, Parent decided to continue M.C.'s home education program.

22. In September 2016, Parent registered M.C. at the Natural Creativity Center ("Natural
Creativity"), a center for neurodivergent students with learning differences. M.C.'s
activities at the Natural Creativity Center supplemented his in-home education program.

23. Upon M.C.'s registration at Natural Creativity, Parent notified the District that M.C.
would be receiving instruction through home schooling and attending Natural Creativity
for supplemental support in the 2016-2017 school year.

24. Parent also retained an attorney to assist her in advocating for M.C. as a student with
disabilities.  Parent, through her attorney, expressed her dissatisfaction with the District's
refusal to appropriately program for M.C.

25. The District agreed to meet with Parent and her attorney to discuss the appropriateness of M.C.'s past programming, and to create a plan for the timely provision of special education services in the subsequent academic year.

26. Parent and the District entered into an agreement on September 9, 2016 ("the 2016 Agreement").  Pursuant to the 2016 Agreement, Parent and the District were to meet no later than April 14, 2017 to discuss M.C.'s special education programming for the 2017-2018 school year.

27. The District also told Parent that if Parent decided to return M.C. to the District in the following year, she would need to notify the District, so that it may re-evaluate M.C. and write an IEP for the 2017-2018 school year.

28. M.C. received instruction through home schooling and attended Natural Creativity in the 2016-2017 school year.  While he made some progress in emotional adjustment, reading, and school avoidance, M.C. continued to need significant support in math, reading, social interaction, and executive functioning.

29. In April 2017 and May 2017, Parent notified the District in writing that M.C. would be returning to the District and required a re-evaluation and an updated IEP.  At that time, M.C. had not been evaluated by the District since March 2014.

30. Despite Parent's notifications, the District did not evaluate M.C. prior to the start of the 2017-2018 school year.  The District failed to issue a Permission to Evaluate form within 10 days of Parent's written request.

31. In August 2017, Parent had not received information from the District about M.C.'s programming for the 2017-2018 school year.

32. Although the District had not responded to Parent's requests for an evaluation and special education programming for the 2017-2018 school year, the District notified Parent that she was obligated to send a notarized affidavit declaring her intent to home school M.C. by August 1, 2017, or be subject to truancy action.

33. On August 1, 2017, Parent registered M.C. for home-schooling for the 2017-2018 school year.

34. After registering M.C. for home schooling, Parent continued to contact the District, through counsel, in August 2017, to request a meeting to discuss M.C.'s 2017-2018 programming.

35. On August 30, 2017, the District had not written an IEP for M.C.

36. On August 30, 2017, Parent filed a Complaint for Due Process against the District. The matter was captioned at ODR No. 19571-17-18.

37. On September 25, 2017, the District finally issued a Permission to Re-evaluate form ("PTRE") to Parent. The District also sent Parent a draft IEP, and told Parent that the IEP was a "starting point" to discuss programming for M.C. The District had not yet conducted an evaluation of M.C. and had not programmed for him in the District in over two years.

38. Parent attended an IEP meeting at the District on October 6, 2017. At that meeting, the District's team recommended that M.C. receive Supplemental Learning Support, Autistic Support, and school-based counseling at the Huey School. The District made these recommendations based on past evaluations that were over three years old. Although M.C. had not attended a brick-and-mortar school in two years, the District's IEP did not include a plan to facilitate M.C.'s transition into the Huey School. The IEP did not

include modifications or specially-designed instruction to address M.C.'s anxiety, or his struggles with social-emotional functioning.

39. Parent expressed her continued belief that M.C. was in need of a small, therapeutic learning environment.  Parent was also concerned that the District's program did not include a plan to address M.C.'s school refusal and did not include a plan to transition M.C. back into a traditional school after being taught at home and at Natural Creativity for two years.  This was especially concerning considering M.C.'s struggles with peer-to-peer interactions.

40. After the October 6, 2017 IEP meeting, the District issued an IEP for the 2017-2018 school year ("the October 2017 IEP").  The District had still not completed an evaluation of M.C. at the time the IEP was issued.

41. Parent, through her attorney, asked the District to fund an independent evaluation of M.C. on October 16, 2017. The District did not respond to this request.

42. The District's revised IEP, dated October 21, 2017, placed M.C. in William L. Sayre High School ("Sayre High School"), and continued his placement in Supplemental Learning Support and Autistic Support.  The changes to the IEP did not address M.C.'s need for a small, therapeutic learning environment.

43. During the October 6, 2017 meeting, the District did not tell Parent that it intended to place M.C. at Sayre High School, the location in which M.C. experienced a traumatizing group assault.  Parent did not agree with the proposed program and placement.

44. In November 2017, Parent sought an independent evaluation for M.C. He was evaluated by Dr. Felicia Hurewitz.  Dr. Hurewitz opined that he still had significant academic, emotional, social, and behavioral issues that impeded his ability to make meaningful

progress. Specifically, Dr. Hurewitz opined that M.C. never fully recovered from the trauma of being assaulted in 2012, and that attending a large school would retraumatize M.C.

45. Specifically, Dr. Hurewitz found that M.C. had a very troubled history in school, due to deficits in social skills and self-regulation, as well as recurring trauma. She also found that M.C. would need an aide in school to guide him through crowded transitions.

46. Dr. Hurewitz found that M.C. suffered from extreme executive dysfunction, required frequent prompting to complete both preferred and non-preferred activities, and required instruction in community-based adaptive skills with money, time, employer expectations, navigation, and improved socialization.

47. In reference to M.C.'s academic needs, Dr. Hurewitz found that according to the Brigance Transition skills inventory, M.C. could not add or subtract more than single digits, could not multiply or divide, could not recognize or understand simple fractions, could not tell time on an analog clock, could not estimate his own height or weight, and could not figure out a date on a calendar two weeks or more ahead of the current date. She found that M.C. used trial-and-error to arrive to appointments on time, because he could not tell time or read bus schedules.

48. Dr. Hurewitz found that on a Qualitative Reading Inventory, M.C. demonstrated slow reading fluency, and an instructional level of comprehension at the fourth to sixth grade level. When he was not allowed to review the text to answer comprehension questions, he struggled to complete comprehension questions at a fourth grade reading level.

49. Dr. Hurewitz found that M.C. struggled significantly with writing and could not write his own address. Additionally, M.C. lacked basic functional writing skills that would be

necessary to write a cover letter to seek employment, respond to communications from employers, or file a consumer complaint about a product.

50. The District completed its evaluation of M.C. on December 12, 2017. As part of the evaluation, the District psychologist observed M.C. at Sayre High School, the District's recommended school placement, where M.C. had been assaulted by a group of students and adults six years prior.  While M.C. interacted pleasantly with the psychologist, he wrote the following description of M.C.'s change in demeanor when confronted with a large group of students in the school hallway:

> "As I walked [M.C.] out to the front door after the session, there were many children near the door as they were transitioning between periods.  It was fairly loud from the students talking and passing in the hallway.  I stopped there and talked to [M.C.].  When I asked him about how he was feeling on a scale of 1-10, with 10 being most anxious, he explained that he was a 9.  When a few more students came and passed by the hallway, he volunteered to tell me that was getting close to a 10…He did appear anxious, as his speech became less fluent, his lower lip appeared to flutter, and his eye contact decreased as he looked down at the floor or at what was going on about him…he still could not seem to calm himself while the students were there and he could not seem to take a deep breath when prompted."

51. Despite the concerns expressed in the District's Re-evaluation Report, which mirrored the concerns of Dr. Hurewitz, the District did not revise its IEP.

52. Despite M.C.'s significant behavioral issues and the District psychologist's recommendation that the District conduct a Functional Behavioral Assessment ("FBA") of M.C., the District had not attempted to conduct an FBA.

53. The District had not written a Positive Behavioral Support Plan ("PBSP") for M.C.

54. The District had not revised its IEP to incorporate the updated evaluations of Dr. Hurewitz or its own psychologist.  The District continues to offer Supplemental Learning and Autism Support to M.C. at Sayre High School.

55. After Parent filed her Complaint for Due Process in August 2017, the parties participated in one hearing session on December 20, 2017, in which Parent testified.  After the hearing session, Parent's attorney withdrew his representation of Parent. Parent withdrew her Complaint.  The Hearing Officer did not reach a decision in ODR No. 19571-17-18.

56. Parent retained undersigned counsel and filed a Complaint for Due Process on April 30, 2018 against the District.  The matter was captioned at ODR No. 20659-17-18.

57. Prior to the first hearing session for ODR No. 20659-17-18, scheduled for June 22, 2018, the Hearing Officer instructed counsel for the parties that the Parent must testify before all additional witnesses.  During the Parent's testimony at the first hearing session, the Hearing Officer discovered that Parent had previously filed and withdrawn a Complaint for Due Process.  The Hearing Officer instructed the Parent to discontinue testifying, so that he may review the transcript from ODR 19571-17-18.

58. Neither the Parent nor the District had requested that the transcript from ODR 19571-17-18 be an exhibit to the current hearing session. The Hearing Officer instructed the parties that he would request the transcript from the Office for Dispute Resolution, review the transcript, and make a final decision regarding the limitation on Parent's testimony at the second hearing session.  Parent was not permitted to speak about her experience with the District leading up to the 2017-2018 school year, her concerns about the District's programming, or the limited participation that was afforded to her in drafting M.C.'s October 2017 IEP.

59. On August 21, 2018, during the second hearing session for ODR No. 20659-17-18, the Hearing Officer submitted the transcript from ODR No. 19571-17-18 into evidence as a

hearing officer exhibit, and instructed the parties that Parent would not be permitted to testify. Undersigned counsel objected to the ruling.

60. Undersigned counsel submitted an affidavit signed by the Parent to be submitted into evidence.  The Hearing Officer excluded the affidavit.

61. During the second hearing session on August 21, 2018, the Hearing Officer noted that the school year would begin soon, and because M.C.'s special education programming was in dispute, he would need to issue an order specifying M.C.'s pendant placement during the dispute.

62. On August 24, 2018, the Hearing Officer issued an Interim Pendency Order, instructing the parties that M.C. would attend school at Sayre High School, as specified in the October 2017 IEP, but with the following revisions:

- The Hearing Officer instructed the District to implement a transition period, beginning with partial school-days, to address M.C.'s reluctance to re-enter the school environment.  This was in contrast to the immediate immersion into traditional school that the October 2017 IEP specified;

- The Hearing Officer instructed the District to provide weekly counseling sessions for M.C., in contrast to the monthly sessions written in the October 2017 IEP;

- The District was instructed to conduct a Functional Behavioral Assessment of M.C., as the District had failed to do so;

- The District was instructed to conduct occupational and speech and language evaluations of M.C., as the District had failed to do so.

63. The October 2017 IEP was characterized by District employees, including the Special Education Director, as a "skeleton IEP," not meant to address the full scope of M.C.'s needs in a year-long school setting.

64. Although M.C. was ordered to attend Sayre High School utilizing the October 2017 IEP with the Hearing Officer's modifications, M.C. refused to go to Sayre High School.

65. Parent communicated with the District frequently, stating that M.C. would begin to panic when she spoke about him attending school at Sayre High School. The District did not change M.C.'s placement or programming to address this. M.C. continued to avoid school.

66. The Hearing Officer issued his final Decision on November 7, 2018.

67. The Hearing Officer's Decision is deficient in numerous ways, such as, but not limited to the following allegations, which are not intended to be an exhaustive list.

68. The Hearing Officer found that the District responded to Parent to address M.C.'s special education programming needs in a timely way. The Hearing Officer made this finding despite finding that Parent contacted the District in May 2017 to discuss M.C.'s special education programming for the 2017-2018 school year, and the District did not respond to Parent's communications until September 2017, approximately four months later, and after Parent had filed her first Complaint for Due Process.

69. The Hearing Officer found that the October 2017 IEP was reasonably calculated to provide significant learning to M.C. in light of his unique needs. The Hearing Officer made this finding despite finding that:

a. The October 2017 IEP indicated that M.C. had behaviors that impeded his learning or that of others, necessitating a Positive Behavior Support Plan based on a Functional Behavioral Assessment, which was never conducted by the District.

b. The October 2017 IEP contained "present" levels of academic and functional performance, adopted from data collected by the District in 2014.

c. The IEP specified that M.C. would receive counseling services 30 minutes per month, in contravention to the recommendation of both the Parent and the District's experts, as well as the Hearing Officer's own recommendations as specified in the Interim Pendency Order.

70. The Hearing Officer found that the District's December 2017 Re-Evaluation was appropriate. The Hearing Officer found this despite instructing the District to conduct additional testing – testing that the District failed to conduct during its December 2017 Re-evaluation of M.C. – in the Interim Pendency Order.

71. In addition, the Hearing Officer erred in excluding significant testimony from the Parent, and limited Parent's right to present her case. The Hearing Officer retrieved, without a request from either party, evidence from a prior proceeding that had not concluded with a final decision.

**CLAIMS**

**COUNT 1 – VIOLATION OF THE INDIVIDUALS WITH
DISABILITIES EDUCATION ACT**

72. Plaintiffs incorporate the allegations of paragraphs 1 through 70 as if fully set forth herein.

73. The District has violated M.C.'s rights as secured by the Individuals with Disabilities in Education Act, 20 U.S.C. § 1400 et seq. and 34 C.F.R. Part 300, by:

    a.  Denying M.C. a free appropriate public education and an opportunity to receive a meaningful benefit from his education since the beginning of the 2017-2018 school year and continuing to the present, in violation of 20 U.S.C. § 1412(a)(1)(A);

    b.  Failing to evaluate M.C. in all areas of disability in violation of 20 U.S.C. § 1414(a)(1);

    c.  Failing to provide the specially designed instruction and related services for M.C. to receive a free appropriate public education in the District, in violation of 20 U.S.C. § 1412(a)(1)(A) and 1412(a)(5);

## COUNT II – VIOLATION OF 22 PA. CODE CHAPTER 14

74. Plaintiffs incorporate the allegations of paragraphs 1 through 72 as if fully set forth herein.

75. The District has violated M.C.'s rights as secured by Pennsylvania special education regulations at 22 Pa. Code § 14.102, adopting and incorporating by reference the statutory requirements of the IDEA and implementing regulations, including, but not limited to:

    a.  Denying Parent reasonable access and participation in M.C.'s special education programming in violation of 22 Pa. Code § 14.108.

    b.  Failing to evaluate M.C. using a group of qualified professionals that includes a certified school psychologist to determine whether M.C. is eligible for special education services for multiple disabilities, other health impairments, and specific learning disabilities in violation of 22 Pa. Code § 14.123(a).

    c.   Failing to supply Parent with a copy of the District's evaluation no later than 60-calendar days after the agency received written parental consent for the evaluation in violation of 22 Pa. Code § 14.123(b), and at least 10 days before an IEP team meeting in violation of 22 Pa. Code § 14.123(d).

    d.   Failing to implement a Positive Behavior Support plan in violation of 22 Pa. Code § 14.133.

### COUNT III – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973

76. Plaintiffs incorporate the allegations of paragraphs 1 through 74 as if fully set forth herein.

77. The District has intentionally, purposefully, and with deliberate indifference violated the rights of M.C. secured by Section 504 of the Rehabilitation Act of 1973, *as amended*, by:

    a.   Subjecting M.C. to discrimination on the basis of his disability, in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(a).

    b.   Denying M.C., on the basis of his disabilities and the severity of his disabilities, the opportunity to participate in and benefit from federally-assisted education services, programs, and activities, including academic and nonacademic services and school activities since the start of the 2017-2018 school year and continuing to the present, in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(a), (b)(I).

    c.   Failing to provide M.C. an opportunity to participate in and benefit from education in the District and other services that is equal to the opportunity afforded students without disabilities, in violation of 34 C.F.R. § 104.4(b)(ii).

    d.   Limiting M.C.'s enjoyment of the right and opportunity to receive a public

education in the District, in violation of 34 C.F.R. § 104.4(b)(1)(vii).

## COUNT IV – VIOLATION OF 22 PA. CODE CHAPTER 15

78. Plaintiffs incorporate the allegations of paragraphs 1 through 76 as if fully set forth herein.

79. The District has violated M.C.'s rights as secured by Pennsylvania regulation 22 Pa. Code § 15.1, adopting and incorporating by reference the statutory requirements of Section 504 of the Rehabilitation Act and its implementing regulations at 4 CFR Part 104.

## COUNT V – DISCRIMINATION IN VIOLATION OF AMERICANS WITH DISABILITIES ACT

80. Plaintiffs incorporate the allegations of paragraphs 1 through 78 as if fully set forth herein.

81. The District has intentionally, purposefully, and with deliberate indifference violated the rights of M.C. secured by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq.* and 28 C.F.R. § 35.130, by:

    a. Denying M.C., on the basis of his disabilities, the opportunity to participate in and benefit from the educational services, programs, and activities of the District, in violation of 42 U.S.C. § 12132(a) and 28 C.F.R. § 30.130(a), (b)(1)(i).

    b. Failing to provide M.C. with an opportunity to participate in and benefit from educational and other services that is equal to the opportunity afforded students without disabilities, in violation of 28 C.F.R. § 35.130(b)(ii).

    c. Failing to provide M.C. with educational and other services that are as effective in affording equal opportunity as the services provided to students without disabilities, in violation of 28 C.F.R. § 35.130(b)(iii).

17

d.  Refusing to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination against M.C., in violation of 28 C.F.R. § 35.130(b)(7).

e.  Providing different and separate services to M.C. from those provided to others, in violation of 28 C.F.R. § 35.130(b)(iv).

f.  Limiting M.C.'s enjoyment of the right and opportunity to receive a public education with support of the District, in violation of 28 C.F.R. § 35.130(b)(1)(vii).

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request this Court:

A.  Accept and fully review the complete administrative record in this matter;

B.  Hear additional evidence as appropriate pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii);

C.  After review of the administrative record, and additional evidence, find as a matter of law that that the District has violated the IDEA, Section 504, the ADA, and the Pennsylvania Code Chapters 14 and 15;

D.  Reverse the Hearing Officer's Final Decision and Order;

E.  Find that the District has denied M.C. a free appropriate public education in the 2017-2018 school year and continuing to the present;

F.  Order the District to reimburse Parent for the cost of the Independent Educational Evaluation;

G.  Award M.C. compensatory education to whatever extent necessary to make up for his lost progress and restore him to the educational path he would have traveled but for the deprivation by the District;

H. Under Section 504, order the District to reimburse the Parent for the cost of Dr. Felicia Hurewitz's testimony at the due process hearing;

I. Order the District to pay Plaintiffs their reasonable attorneys' fees and related costs for the due process hearing in this matter and for attorneys' fees and costs related to this appeal;

J. Grant such other relief as this Court deems appropriate.

Dated: February 5, 2019                    Respectfully Submitted,


Osarugue Grace Osa-Edoh, Esq. (PA ID: 323679)
Kershenbaum & Raffaele, LLC
1230 County Line Road
Bryn Mawr, PA 19010
T: (610) 922-4200
F: (610) 646-0888
E: Grace@MyKidsLawyer.com
*Counsel for Parent and M.C.*

19